IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAVECOM SOLUTIONS CORPORATION fka PACIFIC LIGHTNET, INC., a Hawaii corporation, | ) ) ) ) ) | CV. NO. 11-00337 DAE-KSC |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| VERIZON HAWAII INTERNATIONAL INC., a Delaware corporation; SOUTHERN CROSS CABLES LIMITED, a Bermuda corporation; and DOES 1 through 10, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT SOUTHERN CROSS CABLES LIMITED'S
MOTION FOR SUMMARY JUDGMENT

On November 7, 2011, the Court heard Defendant Southern Cross

Cables Limited's Motion for Summary Judgment.  Duane R. Miyashiro, Esq., and

Michael J. Scanlon, Esq., appeared at the hearing on behalf of Plaintiff; Peter W.

Olson, Esq., and Andrew G. Odell, Esq., appeared at the hearing on behalf of

Defendants Verizon and Southern Cross.  After reviewing the motion and the

supporting and opposing memoranda, the Court **DENIES** Defendant's Motion for

Summary Judgment (Doc. # 22).

## BACKGROUND

I.    Factual Background

The instant action involves a dispute over certain fiber optic cables

installed in the Spencer Beach Manhole on the Big Island of Hawaii ("Manhole").

(Compl. ¶¶ 30–36.)  Plaintiff Wavecom Solutions Corporation ("Plaintiff" or

"Wavecom") owns the Manhole at issue.  ("Amen Decl.," Doc. # 38-1 ¶ 3.)

Wavecom alleges that Defendants Southern Cross Cables Limited ("Defendant" or

"Southern Cross") and Verizon Hawaii International Inc. ("Verizon") own,

operate, and/or benefit from fiber optic cables installed in the Manhole without

providing compensation to Wavecom.  (Compl. ¶¶ 17–30.)

The Manhole at Spencer Beach was constructed in 1999.[1]  (Amend

Decl. ¶ 4.)  It is described in the Complaint as "a subsurface enclosure that

_____

[1]Jeremy Amen, the CEO of Wavecom, states in his declaration that the manhole was built in 1999.  (Amend Decl. ¶ 4.)  However, Plaintiff's Complaint cites to an "August 20, 1997 Conduit Occupancy Agreement" between GST/Wavecom and GTE Hawaiian Telephone Company Incorporated regarding the occupancy rate for the Spencer Beach Manhole that was charged by GST/Wavecom.  (Comp. ¶¶ 14–16.)  In any event, the precise date of construction is not particularly important for purposes of deciding the instant Motion for Summary Judgment.

personnel may enter and use for the purpose of installing, operating, and maintaining communications facilities." (Compl. ¶ 8.) More specifically, the Manhole "contains both land-side and ocean-side access points, known as ducts or conduits, in which communications facilities . . . can be installed." (Id. ¶ 10). The "[o]cean-side access points are used to connect sub-sea cables, which are laid by vessel on the ocean floor, with land-based telecommunications networks." (Id. ¶ 11.) According to Plaintiff, "customarily throughout the telecommunications industry, and specifically at Spencer Beach, the occupancy fee for land-side conduit access is much lower than for ocean-side conduit access . . . ." (Id. ¶ 13. (emphasis in original).)

    The first owner of the Manhole was GST Telecom Hawaii, Inc. ("GST"), which owned the Manhole from the time it was built in 1999 until March 2001. (Amen Decl. ¶ 4.) Plaintiff alleges that in early 1999, GST entered an agreement with Verizon's predecessor-in-interest, GTE Hawaiian Tel International Incorporated ("GTE"), that provided GTE with access to the Manhole for the sole purpose of accessing GTE's specified land-side conduits. (Compl. ¶ 17–19.) Plaintiff further alleges that around June and/or July of 1999, GTE installed undersea fiber cables belonging to Defendant Southern Cross in six of the ocean-side conduits of the Manhole without permission from GST. (Id. ¶ 20–22.)

On or about May 17, 2000, GST filed for bankruptcy. (Amend Decl. ¶ 5.) In connection with the bankruptcy proceedings, certain assets belonging to GST were sold to TM Communications Hawaii LLC ("TMC"). (Id. ¶ 6.) Wavecom subsequently acquired from TMC a variety of assets that formerly belonged to GST, including the Manhole, pursuant to an agreement dated March 27, 2001. (Id. ¶ 7.)

Wavecom maintains that when it took ownership of the GST assets in 2001, it did not know that the undersea fiber cables were installed in the Manhole. (Id. ¶ 8.) The Manhole is not routinely accessed or inspected since it is typically buried under several feet of sand and filled with seawater. (Id. ¶ 9–10.) Further, the presence of the Cables in the Manhole is indiscernible from outside. (Id. ¶ 11.)

In November 2008, Wavecom inspected the Manhole pursuant to an agreement to land a third party's undersea cable in the Manhole. (Id. ¶ 12.) During this inspection, Wavecom discovered the cables, which were labeled with a sign reading: "SOUTHERN CROSS CABLE NETWORTH SYSTEM EARTH CABLE; ALCATEL; Segment 1; 1999." (Id. ¶ 13.) In February 2010, Verizon confirmed to Wavecom that it had granted access to the Manhole for the purpose of installing the cables in the Manhole's ocean-side portals. (Id. ¶ 14.)

Plaintiff now brings suit against Verizon and Southern Cross alleging, inter alia, that "[s]ince 1999, Southern Cross has continuously used the valuable occupancy rights for the ocean-side conduits in the Spencer Beach Manhole, but has made no payment to Wavecom Solutions or any of its predecessors for such use." (Compl. ¶ 57.) According to Plaintiff, "[t]he occupancy of the ocean-side conduits of the Spencer Beach Manhole by Southern Cross . . . constitutes a benefit conferred on Southern Cross." (Id. ¶ 59.) Plaintiff claims that:

> Southern Cross' continued occupancy of the ocean-side conduits in the [] Manhole, without Wavecom [] being paid for those rights, is a challenge to or denial of [Wavecom's] ownership and possession rights to the Spencer Beach Manhole.

(Compl. ¶ 72.) Based on these contentions, Plaintiff asserts that it is entitled to payment for past and ongoing access to and occupancy of the ocean-side conduits in the Manhole and that, if such payment is not received, Wavecom may remove the Southern Cross cables in its discretion. (Id. ¶ 74.)

II.     Procedural Background

On April 25, 2011, Plaintiff filed the instant action in Hawaii state court. ("Compl.," Doc. # 1, Ex. A.) On May 25, 2011, Defendant Verizon removed the action to this Court. (Doc. # 1.) In the Complaint, Plaintiff alleges claims for: (1) breach of implied contract against Verizon (Compl. ¶¶ 37–54); (2)

unjust enrichment/quasi contract against Verizon and Southern Cross (id. ¶¶ 55–63); (3) unfair competition against Verizon (id. ¶¶ 64–69); and (4) declaratory judgment against Verizon and Southern Cross (id. ¶¶ 70–74).

On June 9, 2011, Verizon was served with the Complaint. (Doc. # 6.) Verizon filed an Answer to the Complaint on June 30, 2011. (Doc. # 9.) On July 21, 2011, Southern Cross was served with the Complaint. (Doc. # 20.) To date, Southern Cross has not filed an answer in this case.

On August 11, 2011, Southern Cross filed the instant Motion for Summary Judgment. ("Mot.," Doc. # 22.) On October 19, 2011, Plaintiff filed its Opposition. ("Opp'n," Doc. # 37.) On October 26, 2011, Southern Cross filed its Reply. ("Reply," Doc. # 41.)

STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose

of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving

8

party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>; <u>see also</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required  to resolve in favor of the nonmoving party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

## DISCUSSION

In its Motion for Summary Judgment, Southern Cross advances the following arguments:

(1) Wavecom cannot prove that it conferred a benefit on Southern Cross because Southern Cross does not own, nor has it ever owned, the cables installed in the Manhole;

(2) Wavecom's unjust enrichment claim against Southern Cross is barred by the doctrine of laches;

(3) Wavecom's claim for declaratory relief is improper because it is based on allegations regarding Defendants' past wrongs and, in essence, duplicates Plaintiff's other causes of action.

In response, Plaintiff contends that Southern Cross' Motion for Summary Judgment fails because Southern Cross is deemed to have admitted the allegations

in the Complaint by not timely filing a responsive pleading.  Plaintiff asserts that

the instant Motion also fails because: (1) there are disputed issues of material fact

concerning Southern Cross' alleged ownership of the cables; (2) even assuming

Southern Cross does not own the cables, it is nonetheless unjustly enriched by

making beneficial use of the cables; (3) Southern Cross has failed to show that it is

entitled to summary judgment based on laches; and (4) Wavecom's claim for

declaratory relief does not merely duplicate its unjust enrichment claim.

I.      Southern Cross' Failure to File a Responsive Pleading

As a preliminary matter, Plaintiff argues that Southern Cross' failure

to file a responsive pleading to the Complaint, i.e., either an answer or a dispositive

motion under Rule 12(b), warrants denial of its Motion for Summary Judgment.

(Opp'n. at 14–17.)  As set forth below, this Court disagrees.

First, to the extent that Plaintiff claims that Southern Cross may not

file a motion for summary judgment until it has filed a responsive pleading, that

argument fails because the filing of an answer is not a prerequisite to the filing of a

motion for summary judgment.  Specifically, Rule 56(b) provides that "[a] party

against whom relief is sought may move <u>at any time</u>, with or without supporting

affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b)

(emphasis added).  "Courts and commentators have acknowledged that no answer

need be filed before a defendant's motion for summary judgment may be entertained." Marquez v. Cable One, Inc., 463 F.3d 1118, 1120 (10th Cir. 2006) (quoting INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 404 (6th Cir. 1987)); see also 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2718 at 301 (3d ed. 1998) ("A defending party is not required by the rule to file an answer before moving for summary judgment."). Accordingly, Southern Cross was not required to file a responsive pleading before filing the instant motion.

Further, to the extent that Plaintiff asserts that Southern Cross has not complied with Rule 12 because it has not timely filed a responsive pleading, the Court concludes that the filing of the instant motion effectively extended the time for Defendant to file a responsive pleading until after the Motion for Summary Judgment has been decided. While Rule 12(a) provides that the period for filing an answer is extended when a Rule 12 motion is made, see Fed. R. Civ. P. 12(a), neither the text of Rule12 nor Rule 56 addresses whether the filing of a summary judgment motion likewise tolls the time to file an answer. However, some courts have determined that the tolling effect of Rule 12(a) may be extended by analogy to the filing of a motion for summary judgment where such motion adequately contests the action. See Rashidi v. Albright, 818 F. Supp. 1354, 1356 (D.

Nev.1993), <u>aff'd</u>, 39 F.3d 1188, 1994 WL 594637 (9th Cir. 1994) (denying motion for default judgment for failure to file timely answer where summary judgment motion "demonstrate[d] a concerted effort and an undeniable desire to contest the action"); <u>Mann v. Lee</u>, No. C 07-00781 MMC, 2009 WL 5178095, at *2–3 (N.D. Cal. Dec. 22, 2009) (extending the time for defendants to answer the complaint until after the summary judgment motion had been decided where such motion "demonstrate[d] defendants' intent to defend against plaintiff's action and [might] be dispositive of all of plaintiff's claims"); <u>Bova v. City of Medford</u>, No. 06-1369 PA, 2008 WL 89620, at * 2 (D. Or. 2008) (denying motion to strike answer as untimely where defendants adequately defended against action by filing motion for summary judgment), <u>rev'd on other grounds</u>, 564 F.3d 1093 (9th Cir. 2009). Commentators similarly support tolling under these circumstances. <u>See</u> 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, <u>Federal Practice & Procedure</u> § 2718 at 303–04 ("[A] summary judgment motion made prior to answer should have the benefit of the Rule 12(a) language tolling the period of time in which an answer must be filed."); 6 James Moore, et al., <u>Moore's Federal Practice</u> ¶ 56–08, nn.18 & 19 (2d ed. 1985).

Here, Southern Cross' Motion for Summary Judgment clearly demonstrates an "undeniable desire to contest [Plaintiff's] action." <u>Rashidi</u>, 818 F.

Supp. at 1356.  Indeed, the instant motion expressly denies the allegations in the complaint and seeks to dispose of all of the claims against Southern Cross.  Thus, although the Summary Judgment Motion is not a pleading responsive to the Complaint, it gives  Plaintiff clear notice that Southern Cross' alleged liability is a matter to be litigated in this case.  Accordingly, the Court concludes that the filing of the Summary Judgment Motion effectively tolled the time for Southern Cross to file a responsive pleading.

II.    Unjust Enrichment Claim

Plaintiff claims that Southern Cross has been unjustly enriched by its use of the ocean-side conduits of the Manhole without making any payments to Wavecom or its predecessors for such use.  (Compl. ¶¶ 57, 59, 62.)  In order to prevail on an unjust enrichment claim under Hawaii law, a plaintiff must prove the following two elements: (1) that he or she conferred a benefit upon the opposing party and (2) that the retention of that benefit would be unjust.  Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (Haw. 2004).  The Hawaii Supreme Court has explained that "[i]t is a truism that a person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or cho[]ses in action, . . . , or in any way adds to the other's security or advantage."  Id. at 72 (quoting Restatement of Restitution § 1 cmt. b (1937)).  To be sure,

"while [r]estitution is concerned with the receipt of benefits that yield a measurable increase in the recipient's wealth," the "benefit that is the basis of a restitution claim may take any form, direct or indirect." Restatement 3d of Restitution § 1 cmt. d (2011). In deciding whether there should be restitution, the court is "guided by the underlying conception of restitution, the prevention of injustice." Durette, 100 P.3d at 73.

A.    Benefit Conferred Upon Southern Cross

Southern Cross contends that Plaintiff's unjust enrichment claim against Southern Cross fails because Wavecom cannot prove that it conferred a benefit on Southern Cross. Specifically, Southern Cross asserts that the undisputed facts demonstrate that Wavecom did not confer a benefit on Southern Cross because Southern Cross does not own, nor has it ever owned, the cables in the Manhole. (Mot. at 7.) Southern Cross maintains that its affiliate, Pacific Carriage Limited ("PCL"), is the entity that owns the cables at issue. (Reply at 9.)

Even assuming the veracity of these contentions, the Court concludes that there nonetheless exists a genuine issue of material fact as to whether Wavecom conferred a benefit on Southern Cross. To be sure, in the unjust enrichment count of the Complaint, Plaintiff alleges that:

[s]ince 1999, Southern Cross has continuously used the valuable occupancy rights for the ocean-side conduits in the Spencer Beach Manhole, but has made no payment to Wavecom Solutions or any of its predecessors for such use.

(Compl. ¶ 57.)  Plaintiff further alleges, in the same count, that:

[i]t would be unjust for Southern Cross to retain the benefit of its past and continuing use of the ocean-side conduits in the Spencer Beach Manhole without paying reasonable value therefor.

(Id. ¶ 62.)  Based on these allegations, the Court concludes that the unjust enrichment claim against Southern Cross turns, at least in part, on use rather than ownership of the cables in the ocean-side conduits.[2]  Therefore, even if Southern Cross does not own the cables at issue, Plaintiff may still be able to prove that Southern Cross derived a benefit from Wavecom by using the cables in the Manhole to operate its communications network.  See Durette, 100 P.3d at 72 ("[a] person confers a benefit upon another if he . . . in any way adds to the other's security or advantage"); cf. Restatement 3d of Restitution § 1 cmt. d (2011) ("[a]

---

[2]In reaching this conclusion, the Court rejects Defendant's argument that Wavecom only requests relief for the occupancy of the ocean-side conduits and not for the use of the cables.  As set forth above, the express language in the Complaint makes clear that the unjust enrichment claim against Southern Cross is based on its past and continuing beneficial use of the ocean-side conduits.  Therefore, contrary to Defendant's assertion, Wavecom is not asking this Court to infer additional allegations not found in the language of the Complaint.

benefit that is the basis of a restitution claim may take any form, direct or indirect").

Indeed, the evidence submitted by Plaintiff shows that Southern Cross does benefit from the use of the cables in the Manhole.  First, Plaintiff has submitted a declaration from Wavecom's CEO, Jeremy Amen, attesting to the fact that "Southern Cross uses the cables to operate, manage, and ensure the transport of data across its Southern Cross Cable Network."  (Amen Decl. ¶ 22.)  Amen also states in his declaration that:

> [b]ecause the Southern Cross Cable Network functions as a network, Southern Cross makes beneficial use of the Cables [in the Manhole] . . . whenever information on parts of the network owned by Southern Cross passes through Hawaii, just as the alleged owner of the Cables makes beneficial use of parts of the network owned by Southern Cross when traffic is sent to or from Hawaii.

(Id. ¶ 21.)  Plaintiff has also submitted an October 7, 2004 Decision and Order by the Hawaii Public Utilities Commission in In re Pacific Carriage Ltd., No. 04-0172 ("PUC Decision"), wherein the PUC identifies Southern Cross as one of the "collective owners of the Southern Cross Cable Network" that was formed "to finance, construct, operate, and maintain the Southern Cross Cable Network." ("PUC," Doc. # 38-3 at 4.)  The PUC Decision explains that the collective owners of the Network, including Southern Cross, execute contracts with various

customers to determine the usage of the cable network capacity.  (Id.)

Additionally, Plaintiff has submitted graphs from a website maintained by

Southern Cross illustrating the routes by which data is transmitted through the

Southern Cross Cable Network.  These graphs demonstrate that any

telecommunications data sent to the Big Island from any other parts of the Network

necessarily pass through the cables.  Viewing the evidence in the light most

favorable to the Plaintiff, the Court concludes that Plaintiff has established a triable

issue of fact as to whether Wavecom conferred a benefit on Southern Cross

through the use of the cables in the Manhole.

B.    Doctrine of Laches

Southern Cross also contends that Wavecom's unjust enrichment

claim is barred by the doctrine of laches.  "The doctrine of laches reflects the

equitable maxim that equity aids the vigilant, not those who slumber on their

rights."  Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc., 167

P.3d 225, 284 (Haw. 2007) (quoting Adair v. Hustace, 640 P.2d 294, 300 (Haw.

1982)).  In order for the doctrine to apply, two components must be present.

> First, there must have been a delay by the plaintiff in bringing his
> claim[ ] and that delay must have been unreasonable under the
> circumstances.  Delay is reasonable if the claim was brought without
> undue delay after plaintiff knew of the wrong or knew of facts and
> circumstances sufficient to impute such knowledge to him.  Second,

that delay must have resulted in prejudice to defendant.  Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths of material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

Id. (quoting Adair, 640 P.2d at 321).

Southern Cross argues that Plaintiff unreasonably delayed in bringing this action because the Complaint was filed on April 25, 2011, nearly twelve years after the Cables were allegedly installed.  (Mot. at 8.)  Plaintiff, for its part, contends that any alleged delay is reasonable in light of the circumstances.  (Opp'n at 30.)  As set forth above, the reasonableness of the delay may turn on when Plaintiff obtained knowledge of the alleged wrongdoing or of facts and circumstances sufficient to impute such knowledge to it.  Newton Meadows, 167 P.3d at 284.

Here, Plaintiff has submitted evidence demonstrating that when Wavecom acquired the Manhole in March 27, 2001, it did not know that the Cables were installed in the Manhole.  (Amen. Decl. ¶¶ 7–8.)  Further, the Manhole was not, and is not, routinely accessed or inspected since it is buried under several feet of sand and filled with seawater.  (Id. ¶ 9–10.)  According to Wavecom's CEO, Wavecom did not actually discover the cables until November 2008, when the

Manhole was excavated and drained.  (Id. ¶ 13.)  Based on this evidence, the Court

concludes that there is a triable issue of fact as to the reasonableness of Plaintiff's

delay in bringing this action.[3]

In sum, since Plaintiff has established triable issues of fact with

respect to the unjust enrichment claim against Southern Cross, the Court **DENIES**

the portion of the summary judgment motion directed at Count II.

III.     Declaratory Relief Claim

In Count IV of the Complaint, Plaintiff seeks a declaratory judgment

establishing, inter alia, that Southern Cross has no right to occupy the ocean-side

conduits in the Manhole without payment to Wavecom and that, unless Wavecom

receives such payments, Wavecom may remove the Southern Cross cable at its

discretion.  (Compl. ¶ 74.)  Southern Cross contends that Plaintiff's claim for

declaratory relief against Southern Cross is improper because it is based on

---

[3]Defendant also contends that the delay resulted in prejudice to Southern
Cross because Plaintiff now seeks twelve years of damages.  The Court is skeptical
that this constitutes a tenable argument.  See TransWorld Airlines, Inc. v. Am.
Coupon Exchange, Inc., 913 F.2d 676, 696 (9th Cir. 1990) ("the prejudice
requirement does not mean merely that the defendant will be worse off if the relief
is granted than he would be if it were not; that sort of prejudice could be claimed
by all defendants all of the time").  In any event, the Court need not reach this issue
in light of its finding that there is a triable issue of fact as to the reasonableness of
the delay.

Defendant's alleged past wrongs and in essence duplicates Plaintiff's other causes of action.  (Mot. at 10.)

"A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so."  Seattle Audubon Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir.1996) (citing 28 U.S.C. § 2201).  Since a declaratory judgment is not a corrective action, it should not be used to remedy past wrongs.  See, e.g., Marzan v. Bank of Am., 779 F. Supp. 2d 1140, 1146 (D. Haw. 2011) ("[B]ecause Plaintiffs' claims are based on allegations regarding Defendants' past wrongs, a claim under the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other causes of action."  (citations omitted)); Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009) ("[T]he Court finds that the declaratory relief Plaintiffs seek is entirely commensurate with the relief sought through their other causes of action. Thus, Plaintiffs' declaratory relief claim is duplicative and unnecessary.").  Rather, the "useful purpose served by the declaratory judgment is the clarification of legal duties for the future."  Amsouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004); see also Societe de

Conditionnement en Aluminum v. Hunter Eng'g Co., 655 F.2d 938, 943 (9th Cir. 1981) ("[The Declaratory Judgment Act] brings to the present a litigable controversy, which otherwise might only by (sic) tried in the future.")

Here, Plaintiff asserts two causes of action against Southern Cross: (1) unjust enrichment and (2) declaratory judgment. Plaintiff's claim for declaratory relief against Southern Cross is not commensurate with the relief sought through Plaintiff's unjust enrichment claim. Specifically, Plaintiff's unjust enrichment claim seeks restitution for its past and continuing use of the ocean-side conduits. (See Compl. ¶ 62–63.) By contrast, Plaintiff's declaratory relief claim seeks, inter alia, a declaration by this court that if Wavecom does not receive timely compensation for the ocean-side conduits of its Manhole, it may remove the cables at its discretion. In other words, the declaratory relief claim seeks clarification with respect to Wavecom's future right to remove the cables if and when it does not receive payment. Therefore, contrary to Defendant's assertion, the declaratory relief claim is not based on Southern Cross' alleged past wrongs and does not merely duplicate Plaintiff's other cause of action against Southern Cross.

Accordingly, the Court **DENIES** the portion of the summary judgment motion challenging the declaratory relief claim.

<u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Defendant's Motion for Summary Judgment (Doc. # 22). Southern Cross shall have fourteen (14) days from the filing of this Order to answer the Complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 7, 2011.

_____
David Alan Ezra
United States District Judge

<u>Wavecom Solutions Corp. v. Verizon Hawaii Int'l Inc., et al.</u>, CV No. 11-00337 DAE KSC; ORDER DENYING DEFENDANT SOUTHERN CROSS CABLES LIMITED'S MOTION FOR SUMMARY JUDGMENT